IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEVEN D. STEWART,

                      Plaintiff,

  v.                                              OPINION and ORDER

LORI DOEHLING, RENEE SCHUELER,
SALAM SYED, KARL HOFFMAN,                  20-cv-667-jdp
EDWIN TJARDES, and AARON KUCHINSKI,

                      Defendants.

---

    Pro se plaintiff Steven D. Stewart alleges that staff at Columbia Correctional Institution and at the UW Health Urology Clinic violated the Eighth Amendment and Wisconsin negligence law by failing to adequately treat his bladder problems. Two defendants, nurses Edwin Tjardes and Aaron Kuchinski, move for summary judgment. Dkt. 41; Dkt. 47. The other defendants are represented by different counsel and did not move for summary judgment. The claims of the other defendants will proceed to trial.

    I allowed Stewart to proceed against Tjardes and Kuchinski on claims related to their alleged failure to catheterize Stewart following an appointment at UW Health. Stewart is proceeding on state-law medical negligence claims against Tjardes and Kuchinski and on an Eighth Amendment claim against Tjardes. *See* Dkt. 10, at 13–14.

    I will grant summary judgment to Tjardes on Stewart's Eighth Amendment claim. It is undisputed that Tjardes knew that Stewart could self-catheterize and that Tjardes gave Stewart a new catheter, so Tjardes's failure to insert the catheter himself does not demonstrate that he disregarded Stewart's medical needs. Stewart isn't proceeding on any other federal claims

related to his catheter, so I will relinquish jurisdiction over Stewart's state-law claims against Tjardes and Kuchinski and dismiss those claims without prejudice.

BACKGROUND

At all times relevant to this lawsuit, Steven Stewart was an inmate at Columbia Correctional Institution (CCI). Stewart suffers from a neurogenic bladder condition that makes it difficult for him to urinate without a catheter. Most of the time, Stewart uses an "indwelling" or "Foley" catheter. This type of catheter stays in place and is connected to a drainage bag that can be changed without changing the catheter.

In August 2017, Stewart had an appointment at the UW Health Urology Clinic for urodynamic testing, where he was seen by defendant Nurse Edwin Tjardes. At the beginning of the appointment, Tjardes removed the Foley catheter from Stewart's bladder. Tjardes asked Stewart if he self-catheterizes, and Stewart said that he did. Tjardes then placed a sterile straight testing catheter into Stewart's bladder to obtain a urine sample for analysis. Because of the urine draw, Tjardes believed that Stewart's bladder was empty or nearly empty. Dkt. 45, ¶ 24. The test showed that Stewart had an active urinary tract infection (UTI).

The parties dispute what happened at the end of the appointment. Tjardes says that he offered to insert a new Foley catheter and that Stewart refused because he would prefer to self-catheterize. Stewart says that Tjardes never said anything about replacing the catheter. But it's undisputed that Tjardes gave a new catheter and supplies to the correctional officers who were accompanying Stewart.

Stewart was placed in a transport van to return to CCI. On the way back to the prison, Stewart began to suffer from painful bladder spasms. Stewart says that he suffered these spasms

because he was unable to urinate without a catheter inserted. By the time Stewart arrived at CCI intake, the pain was so bad that he had to lie on the floor. Security staff contacted the prison's health services unit. Defendant Aaron Kuchinski, a contract nurse who works at CCI, arrived at intake around 20 minutes later. The parties' submissions are unclear about precisely what happened next: Kuchinski doesn't remember the incident, *see* Dkt. 54, ¶ 6, and Stewart's account is difficult to understand. But I gather the following from Stewart's declaration and brief.

Kuchinski did not bring a catheter or lubrication to intake. A correctional officer gave Stewart a catheter—I infer this is the catheter provided by nurse Tjardes at the end of Stewart's UW appointment—and Stewart attempted to insert the catheter himself, without lubrication. After that proved unsuccessful, a correctional officer gave Kuchinski lubrication. Kuchinski applied the lubrication and attempted to insert the catheter. Stewart says that his UTI made inserting the catheter more difficult, and Kuchinski was unable to catheterize Stewart. After Kuchinksi's failed to insert the catheter, Stewart had to "force" the catheter back into his bladder to stop the pain. Dkt. 63, at 2. After Stewart was catheterized, he was able to urinate and his pain decreased. Stewart says that because of these events, he experienced pain without a catheter for at least 45 minutes. *Id* at 3.

## ANALYSIS

### A. Eighth Amendment claim

I granted Stewart leave to proceed on an Eighth Amendment claim against Tjardes for failing to replace Stewart's catheter at the end of his appointment at the UW Health Urology Clinic. The Eighth Amendment prohibits prison officials from consciously disregarding

3

prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). At screening, I noted that Tjardes isn't a prison employee, so it wasn't clear that he was acting under color of state law. Dkt. 10, at 7. But Tjardes doesn't dispute that the Eighth Amendment applies to him, *see* Dkt. 43, so I will address the merits of Stewart's claim.

To prevail on an Eighth Amendment medical care claim, a prisoner must prove that he suffered from an objectively serious medical condition and that staff consciously failed to take reasonable steps to help him. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). The standard for an Eighth Amendment claim is higher than a medical malpractice claim: inadvertent error, negligence, and even gross negligence are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996). Summary judgment is proper if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In evaluating a motion for summary judgment, the court must construe the facts and draw all reasonable inferences from those facts in favor of the nonmoving party. *See Automobile Mechanics Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007).

Stewart contends that by failing to replace Stewart's catheter, Tjardes consciously disregarded the risk that Stewart would suffer pain and bladder spams. Tjardes doesn't dispute that Stewart's neurogenic bladder condition qualifies as a serious medical need. But Tjardes contends that he didn't disregard Stewart's medical needs by allowing Stewart to leave the appointment without a catheter inserted.

The parties dispute whether Tjardes offered to catheterize Stewart and whether Stewart refused. But the dispute is immaterial. Even if I accept Stewart's version of the facts as true, Tjardes' failure to reinsert Stewart's catheter at the appointment does not demonstrate

4

conscious disregard of Stewart's medical needs. Tjardes did not ignore Stewart's need for a catheter. Tjardes asked Stewart if he catheterized himself, and Stewart said that he did. Tjardes then gave a new catheter to the officers accompanying Stewart so that Stewart could reinsert the catheter himself when he returned to CCI. A health care provider's treatment decision violates the constitution of if it is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate his condition." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). Stewart identifies no evidence that Tjardes's decision to allow Stewart to catheterize himself after he returned to the prison was blatantly inappropriate. Tjardes knew that Stewart could insert the catheter himself. And Tjardes knew that Stewart's bladder was empty, or nearly empty, after Tjardes catheterized Stewart to draw a urine sample during the appointment. I infer that Stewart couldn't catheterize himself at the end of the appointment because the supplies were given directly to the officers transporting him. Even so, nothing in the record suggests that Tjardes knew that Stewart would be harmed if Stewart waited until he was back at CCI to insert a new catheter.

But even if it was a mistake for Tjardes to allow Stewart to leave without a catheter inserted, that mistake demonstrates, at most, mere negligence; it doesn't show that he knowingly disregarded a serious risk to Stewart's health. Tjardes is entitled to summary judgment on Stewart's Eighth Amendment claim.

B.  **Malpractice claims**

Stewart is also proceeding on medical malpractice claims against Tjardes and Kuchinski. Under Wisconsin law, "[a] claim for medical malpractice, as all claims for negligence, requires the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860.

5

Because the court has jurisdiction to hear Stewart's federal claim, it also has supplemental jurisdiction over all claims that are so closely related that they are essentially part of the same case. *See Williams Elecs. Games, Inc. v. Garrity*, 479 F.3d 904, 906 (7th Cir. 2007) (citing 28 U.S.C. § 1367(a)). But district courts have broad discretion in determining whether to exercise supplemental jurisdiction over state-law claims. *Van Harken v. City of Chi.*, 103 F.3d 1346, 1354 (7th Cir. 1997). In determining whether to exercise supplemental jurisdiction, I must consider whether the exercise of supplemental jurisdiction is in the interest of fairness and judicial economy. *Montano v. City of Chicago*, 375 F.3d 593, 602 (7th Cir. 2004).

In the Seventh Circuit, the usual practice is to dismiss state-law claims when all federal claims have been dismissed prior to trial. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) (citing 28 U.S.C. § 1367(c)(3)). I have not dismissed all of Stewart's federal claims from this case; he is still proceeding on Eighth Amendment claims against CCI medical staff related to delays in scheduling Stewart's urodynamic testing and failing to provide Stewart with antibiotics to treat his UTI. But I conclude that Stewart's state-law claims against Tjardes and Kuchinski are not so closely related to the remaining federal claims that they must be tried together. The federal claims are against a different set of defendants and are based on a different set of facts than the claims against Tjardes and Kuchinski. Evidence about Tjardes and Kuchinksi's failure to catheterize Stewart simply isn't relevant to whether the other defendants failed to timely schedule Stewart's appointments and provide him antibiotics. At screening, I allowed all of Stewart's claims to proceed together because they all related to his medical care. But with the benefit of the better-developed summary judgment record, it is clear that the claims are about distinct, unrelated aspects of Stewart's treatment. Keeping Tjardes and Kuchinski in the case would unnecessarily lengthen and complicate the trial of Stewart's

6

remaining federal claims. I will dismiss Stewart's state-law claims against Tjardes and Kuchinski without prejudice to him refiling them in state court.

ORDER

IT IS ORDERED that:

1. Defendant Edwin Tjardes's motion for summary judgment, Dkt. 41, is GRANTED as to Plaintiff Steven Stewart's Eighth Amendment claim, which is DISMISSED with prejudice.

2. Stewart's state-law malpractice claims against Tjardes and Kuchinski are DISMISSED without prejudice under 28 U.S.C § 1367(c)(3).

Entered August 31, 2022.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge